UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| VIRGIL GRAVEL OWENS, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:05-cv-46 |
| ) | |
| v. ) | Honorable Richard Alan Enslen |
| ) | |
| JOHN RUBITSCHUN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the entire $250 civil action filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  Factual Allegations

Plaintiff Virgil Gravel Owens presently is incarcerated with the Michigan Department of Corrections and housed at the Deerfield Correctional Facility.  He sues three members of the Michigan Parole Board, Chairman John Rubitschun and members William Slaughter and Margie McNutt.

In his complaint, Plaintiff objects to Defendants' repeated denials of his parole.  He contends that the parole denials violate Parole Board guidelines by ignoring Plaintiff's guideline score that places him as a "high probability of parole."  Plaintiff argues that the denials are based on the Defendants' impermissible intent to punish a particular class of prisoners: those convicted of criminal sexual conduct.  Similarly, he contends that Defendants rely solely on the nature of the crime in reaching their decision, suggesting that parole interviews are neither fair nor unbiased.  Plaintiff also objects to Michigan legislation, effective March 10, 2000, which eliminated the right of prisoners to appeal parole denials while permitting victim and prosecutors to appeal a grant of parole.  *See* MICH. COMP. LAWS § 791.234(9) (West. 1999); MICH. CT. R. 7.104(D)(1), (2)(a).  He asserts the legislation impermissibly and arbitrarily discriminates between prisoners and others.

II.  Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although Plaintiff does not articulate the constitutional basis for his claims, the only constitutional provisions arguably implicated by facts alleged are the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Court will discuss each claim in turn.

### A. Due Process

Plaintiff claims that he was denied a fair hearing on his parole and that, in reaching their parole decisions, Defendants impermissibly considered only the nature of his offense, not the other factors relevant to release. Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1995 decision,

the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

Arguably, Plaintiff suggests that, regardless of the existence of any liberty interest protected by procedural due process, he has been denied substantive due process by the arbitrary

actions of the Parole Board in refusing to follow state law. To the extent Plaintiff relies on Defendants' failure to follow parole guidelines in reaching their decisions, he fails to state a federal constitutional claim. A state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985). Section 1983 is addressed to remedying violations of federal law, not state law.

To the extent Plaintiff seeks to raise a substantive due process claim under the federal constitution, his claim also is without merit. Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980), Plaintiff does not present any such allegations here. *See Mayrides v. Chaudhry*, No. 01-3369, 2002 WL 1359366, at *2 (6th Cir. June 20, 2002) (considering substantive due process claim in context of parole). In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Plaintiff must show that the Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *See id.* at *2 (citing *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled on other grounds by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)). Clearly, in this case, it cannot be said that the actions of the Michigan Parole Board in continuing to deny Plaintiff release on parole either shock the conscience or constitute an "egregious abuse of governmental power." *Id.* at 950. Plaintiff pleaded *nolo contendere* to the offense, yet he now claims that he is innocent. In concluding that Plaintiff fails to accept responsibility for his conduct, that he has gained no insight into the offense, and that he continues to represent a risk to society if released, the Parole

Board cannot reasonably be considered to have committed an egregious abuse of governmental power. Consequently, Plaintiff has failed to assert a substantive due process claim.

### B.  Equal Protection

Based on his factual allegations, Plaintiff appears to argue that his Fourteenth Amendment right to equal protection of the laws has been violated because prosecutors and victims may appeal the grant of parole, while a prisoner has no right to appeal whatsoever. As previously discussed, under statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court effective March 10, 2000, a prisoner no longer has an ability to appeal a parole denial under state law. *See* MICH. COMP. LAWS § 791.234(9) (West. 1999); MICH. CT. R. 7.104(D)(1), (2)(a).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz*, 442 U.S. at 7; *Sweeton*, 27 F.3d at 1164-65. In addition, prisoners are not a suspect

class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class).

Thus, in order to establish an equal protection violation, Plaintiff must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate legislative purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. Under this standard,

> the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1, (1992). Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.

*Hadix*, 230 F.3d at 843.

### 1. Similarly situated

The similarly situated inquiry focuses on whether Plaintiff is similarly situated to another group for purposes of the challenged government action. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *accord Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (equal protection requires "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged"). As stated by the First Circuit,

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). *See also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (holding that, in employment context, to show that others are similarly situated, a plaintiff must demonstrate that the comparables he proffers are similar in all relevant respects). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

One could argue that inmates, prosecutors, and victims are "similarly situated" for purposes of this case because each may become an aggrieved party as a result of a decision – either favorable or unfavorable to parole– by the Michigan Parole Board. However, it is difficult to conceive of these parties as being similarly situated for purposes of a parole decision. A prisoner who is denied parole may have his file reviewed again in the future. MICH. COMP. LAWS § 791.234(6)(a), (b). In contrast, allowing the prosecutor and victim to appeal a decision granting parole appears to be the only means by which the state can assure both the public and the victim an opportunity to challenge what they may believe is a wrong decision granting early release. In addition, because "the prison setting is *sui generis*," a legislature's choice "to treat prisoners differently than non-prisoners is plainly justified by the idiosyncratic characteristics of that setting." *Boivin v. Black*, 225 F.3d 36, 44 (1st Cir. 2000). "[P]risoners have substantial quantities of free time, have all their basic needs met, and are provided with free writing materials and often legal assistance." *Hadix*, 230 F.3d at 844. "[W]hat would normally be thought of as the burdens which

attend litigation . . . carry few or no opportunity cost to prisoners." *Id*. For all these reasons, the Court concludes that prisoners are not similarly situated to prosecutors and victims.

### 2. Rational basis

Even if prisoners were deemed "similarly situated" to prosecutors and victims for purposes of a decision of the parole board, Plaintiff's equal protection claim fails because the classification survives rational basis review. *See Wilson*, 148 F.3d at 604 ("differentiation between prisoners and non-prisoners . . . has a rational basis").

> [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). Where there are "plausible reasons" for the legislature's action, a court's inquiry is at an end; "[i]t is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]'" *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-26 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights). Finally, Michigan's parole statutes also include economic considerations, which are a legitimate government interest. *See Franciosi v. Mich Parole Bd.*, 586 N.W.2d 542, 546 (Mich. Ct. App. 1998) (holding that MICH. COMP. LAWS § 791.236(6), which prohibited attorneys from representing prisoners at parole release hearings, was rationally related to legitimate economic considerations), *aff'd*, 604 N.W.2d 675 (Mich. 2000).

The Michigan Court of Appeals squarely has considered whether the distinction drawn between prisoners and prosecutors and victims under MICH. COMP. LAWS § 791.234(9) is rationally related to a legitimate governmental interest. *See Morales v. Mich. Parole Bd.*, 676 N.W.2d 221 (Mich. Ct. App. 2004). The *Morales* court held that the Michigan legislature has a "legitimate interest in saving public funds in response to innumerable frivolous requests by incarcerated prisoners for the review of the Parole Board's denials of parole." *Id.* at 235. The court therefore concluded that the distinction drawn by the legislature did not implicate the Equal Protection Clause. *Id.* at 236.

Parole laws represent "the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society." *McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973). Allowing prisoners to be reviewed for parole at specified intervals, while prohibiting them from appealing adverse decisions, is a rational attempt to balance these concerns. The State of Michigan could rationally intend the limitation on appeal rights to provide a counter-balance to a prisoner's obvious but understandable incentive to litigate the issue of parole, as well as to protect the state treasury, from which funds will have to be expended in responding to appeals of parole denials. *See Hadix*, 230 F.3d at 845 (holding that § 803(d)(3) of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3), did not violate plaintiff's equal protection rights). Similarly, it is rational "for the state to avoid the expense and inconvenience of formal, adversarial type parole hearings." *Johnson*, 110 F.3d at 307 n.11. Here, a tight fit exists between means and end, as prisoner appeals of parole denials are eliminated altogether. That other persons are permitted to appeal grants of parole does not detract from the rationality of the state's limitation. "The States must have due flexibility in formulating parole

procedures and addressing problems associated with confinement and release." *Garner v. Jones*, 529 U.S. 244, 251 (2000). "'The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific.'" *McGinnis v. Royster*, 410 U.S. 263, 270 (1973) (quoting *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913)).

The Court agrees with the Michigan Court of Appeals in *Morales*, 676 N.W.2d at 235, that there exists a rational relationship to a legitimate state purpose in Michigan's legislative scheme prohibiting a prisoner from appealing a decision of the Michigan Parole Board to deny parole. *See also Jackson v. Jamrog*, No. 01-CV-73310-DT, 2002 WL 1879940, at **2-4 (E.D. Mich. July 26, 2002) (concluding that MICH. COMP. LAWS § 791.234(9) did not violate the equal protection clause both because prisoners were not similarly situated with prosecutors and victims and because the statute was rationally related to numerous legitimate state purposes). Accordingly, Plaintiff's equal protection claim is without merit.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

DATED in Kalamazoo, MI:  
May 24, 2005

 /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
UNITED STATES DISTRICT JUDGE